UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYNRICO RODGERS,<br><br>             Plaintiff,<br><br>     v.<br><br>C.C. MARTIN, et al.,<br><br>             Defendants. | Case No.  1:12-cv-1686-AWI-MJS (PC)<br><br>**FINDINGS AND RECOMMENDATIONS TO:**<br><br>**(1) DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 47); AND**<br><br>**(2) GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 48)**<br><br>**FOURTEEN (14) DAY OBJECTION DEADLINE** |

**I.     PROCEDURAL HISTORY**

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983. (ECF No. 1 & 5.) This matter proceeds against Defendants Martin and Blattel on Plaintiff's First Amendment retaliation and Eighth Amendment deliberate indifference claims. (ECF No. 7)

On August 7, 2014, Plaintiff filed a motion for summary judgment. (ECF No. 47.) Defendants filed an opposition. (ECF No. 49.) Plaintiff filed no reply.

On August 11, 2014, Defendants filed a cross-motion for summary judgment. (ECF No. 48.) Plaintiff filed an opposition. (ECF No. 65.) Defendants filed a reply. (ECF No. 70.) These matters are deemed submitted pursuant to Local Rule 230(*l*).

## II. LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Wash. Mut. Inc. v. United States, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed R. Civ. P. 56(c)(1).

Plaintiff bears the burden of proof at trial, and to prevail on summary judgment, he must affirmatively demonstrate that no reasonable trier of fact could find other than for him. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). Defendants do not bear the burden of proof at trial and, in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Secs. Litig., 627 F.3d 376, 387 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun, 509 F.3d at 984, and it must draw all inferences in the light most favorable to the nonmoving party, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011).

## III. PLAINTIFF'S CLAIMS

Plaintiff is incarcerated at Kern Valley State Prison, but complains of acts that occurred at Corcoran State Prison. The relevant allegations in his original complaint (ECF No. 1) may be summarized essentially as follows:

Plaintiff filed administrative complaints against Defendants Martin and Blattel in October 2010.

On November 29, 2010, Plaintiff asked Defendant Martin about the status of a pending administrative complaint. Defendant Martin refused to assist Plaintiff and they exchanged words. Defendant Blattel approached. Plaintiff told Blattel to mind his own business. Blattel responded, "Martin is my business" and threatened Plaintiff that they "would have something for [him] tonight." In the evening, Defendants denied Plaintiff his evening meal. Later, Plaintiff was "bird bathing" with his cell door covered by a blanket. Defendants appeared and ordered the blanket removed. Plaintiff refused due to fear of receiving a rules violation for exposing himself. Plaintiff grabbed the blanket. Blattel reached through the food port and grabbed the blanket from Plaintiff. Defendant Martin told Defendant Blattel to pepper spray Plaintiff. Blattel pepper sprayed Plaintiff in the face and chest, and sprayed the cell and its contents stating, "I told you that we [would] be back later, didn't I."

Plaintiff complained to Martin and Blattel that he "could not breathe" and "begged" for a shower. Defendants laughed, denied the request, and told Plaintiff to use toilet water. Defendants left Plaintiff with severe pain and difficulty breathing. The pepper spray fumes remained in the cell for days, causing Plaintiff to suffer an ongoing burning sensation of his skin, nausea, and headaches.

**IV.    DISCUSSION**

    **A.    Legal Standards**

        **1.    Cruel and Unusual Punishment**

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners from inhumane methods of punishment and inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citations omitted). "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994).

A conditions of confinement claim has both an objective and a subjective

3

component. See Farmer, 511 U.S. at 834. "First, the deprivation alleged must be . . . sufficiently serious," and must "result in the denial of the minimal civilized measure of life's necessities." Id. (internal quotation marks and citations omitted) "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." Hudson v. McMillian, 503 U.S. 1, 9 (1992).

Second, the prison official must have acted with "deliberate indifference" to inmate health or safety. Farmer, 511 U.S. at 834. "Mere negligence is not sufficient to establish liability." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). Rather, a plaintiff must show that a defendant knew of, but disregarded, an excessive risk to inmate health or safety. Farmer, 511 U.S. at 837. That is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

Delays in providing showers and medical attention for inmates suffering from harmful effects of pepper spray may violate the Eighth Amendment. Clement v. Gomez, 298 F.3d 898, 905-06 (9th Cir. 2002).

### 2. Retaliation

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

The second element focuses on causation and motive. See Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009). A plaintiff must show that his protected conduct was a "'substantial' or 'motivating' factor behind the defendant's conduct." Id. (quoting Sorrano's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). Although it can be difficult to establish the motive or intent of the defendant, a plaintiff may rely on circumstantial evidence. Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003) (finding that

a prisoner established a triable issue of fact regarding prison officials' retaliatory motives by raising issues of suspect timing, evidence, and statements); Hines v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997); Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995) ("timing can properly be considered as circumstantial evidence of retaliatory intent").

In terms of the third prerequisite, filing a grievance is a protected action under the First Amendment. Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989).

With respect to the fourth prong, "[it] would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity . . . ." Mendocino Envtl. Ctr. v. Mendocino Cnty., 192 F.3d 1283, 1300 (9th Cir. 1999). The correct inquiry is to determine whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. Rhodes, 408 F.3d at 568-69 (citing Mendocino Envtl. Ctr., 192 F.3d at 1300).

With respect to the fifth prong, a prisoner must affirmatively show that "'the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985).

**B.   Parties' Arguments**

**1.   Plaintiff's Motion for Summary Judgment**

Plaintiff's motion relies largely on the allegations of his complaint and argues that, based thereon, he is entitled to judgment as a matter of law. He asserts that Defendants pepper sprayed him because of his prior grievances and falsified a Rules Violation Report in relation to the November 29, 2010 incident. He contends that he complained of pain and difficulty breathing following the administration of pepper spray, but that Defendants refused to remove him from his cell in retaliation. Plaintiff also raises arguments in relation to claims that the Court dismissed for failure to state a claim.

1 In response, Defendants point out that several of Plaintiff's arguments concern 2 claims that were dismissed at the screening stage. They also argue that Plaintiff is 3 barred from contesting the findings of his disciplinary proceedings because he was 4 assessed a loss of good time credits in relation to those proceedings and did not 5 attempt to overturn the guilty finding in a petition for a writ of habeas corpus. In 6 response to Plaintiff's remaining arguments, Defendants refer to their own motion for 7 summary judgment, discussed in detail below.

### 2. Defendants' Motion for Summary Judgment

9 Defendants argue that Plaintiff was not subjected to cruel and unusual 10 punishment because he had the means to decontaminate himself in-cell. They further 11 argue that they were not deliberately indifferent to Plaintiff's needs because they did not 12 purposefully refuse to provide decontamination or medical care. Specifically, they state 13 that they did not make the decision to proceed with in-cell self-decontamination. This 14 decision was made by the Incident Commander, Lieutenant Lowden, and passed down 15 by Sergeant Gaines. Defendants could not have taken Plaintiff to the showers without a 16 direct order from Sergeant Gaines.

17 Defendants state that they knew Defendant had access to cool water and the 18 means to decontaminate himself in-cell. They further knew that in-cell self-19 decontamination is allowed under the Department Operations Manual where an inmate 20 is extremely agitated or uses force to secure the food port. Although Plaintiff contests 21 holding the food port open, he was found guilty in relation to this incident on a Rules 22 Violation Report of delaying a peace officer by holding open the food port. Because this 23 guilty finding has not been overturned, Plaintiff is barred from arguing in this action that 24 he did not hold the food port open.

25 Defendants further argue that they were not deliberately indifferent to Plaintiff's 26 medical needs because medical attention was provided. A nurse checked on Plaintiff 27 shortly after the incident, and Defendants were aware of that at the time. The nurse 28 concluded further examination and treatment was not medically necessary. Defendants

6

were entitled to rely on the opinions of medical professionals. Following the incident, Plaintiff was coherent, spoke normally, and did not appear to need emergency medical attention. Defendants did not believe exposure to pepper spray posed any serious risk to Plaintiff's health.

Defendants also argue that Plaintiff's retaliation claim fails on several grounds. Plaintiff alleges that, in response to his administrative appeals, Defendants' refused to take him to the showers, decontaminate his cell, take him to the medical clinic, and serve him an evening meal. However, Defendants contend that their actions were motivated by legitimate penological goals rather than Plaintiff's appeals, and Plaintiff cannot show otherwise. They also argue that legitimate correctional goals, specifically, institutional security, supported the decision to require him to decontaminate in-cell. They argue that denying Plaintiff a single meal would not chill a person of ordinary firmness.

Lastly, Defendants argue that they are entitled to qualified immunity because they did not violate Plaintiff's rights and, in any event, the law on in-cell self-decontamination was not clearly established at the time of the incident. Additionally, Defendants could have reasonably believed it was lawful to proceed with in-cell self-decontamination because doing so was authorized by the Department Operations Manual and an order from their Sergeant. They also were entitled to rely on a nurse's assessment that emergency medical treatment was not necessary. Lastly, they could reasonably believe that they were not violating Plaintiff's First Amendment rights in denying him an evening meal because he was belligerent, refused his meal, and the denial of a single meal would not chill a person of ordinary firmness.

In response, Plaintiff disputes Defendants' version of the facts. He disputes Defendants' claim that he was belligerent and refused to go to the back of the cell to receive his evening meal. He disputes becoming belligerent prior to being pepper sprayed, and that he held open his food port. He provides affidavits from other inmates and himself to support his version of the events.

In reply, Defendants argue that, because Plaintiff's excessive force and retaliation claims in relation to being pepper sprayed have been dismissed, and therefore there is no claim regarding whether the use of pepper spray was proper, it is irrelevant whether Plaintiff held open the food port with his hand, or whether he held open the food port in a struggle over a blanket. They further argue that Plaintiff has submitted no evidence to suggest he could not decontaminate in-cell or that Defendants made the decision to limit Plaintiff to in-cell decontamination. They also argue that Plaintiff's claims that he was not instructed on how to self-decontaminate and that the nurse's evaluation of him was insufficient are immaterial.

### C. Disputed and Undisputed Facts

Based on the submissions of the parties, the Court finds the following facts to be undisputed, unless otherwise stated.

At all times relevant to the complaint, Plaintiff was housed in the Security Housing Unit ("SHU") at California State Prison Corcoran.

In October 2010, Plaintiff filed administrative appeals concerning the conduct of Defendants Martin and Blattel.

On November 29, 2010, Plaintiff and Defendants engaged in a verbal dispute. The nature of that dispute is contested. According to Defendants, Plaintiff became belligerent and yelled to Defendant Martin, "Fuck you, bitch!" and "I've got a staff complaint on you." According to Plaintiff, Plaintiff called Defendant Martin over to ask about the status of his 602 administrative appeals. Also according to Plaintiff, Defendant Martin refused to assist and Defendant Blattel threatened to do something to Plaintiff later that night.

Later in the evening, Defendants refused to provide Plaintiff his evening meal. The reason for the refusal is disputed. Plaintiff claims that Defendants walked by his cell without feeding him out of retaliation. Defendants contend that they did not provide the meal because Plaintiff was belligerent, refused to go to the back of his cell, and refused his meal.

Also on November 29, 2010, an altercation occurred at Plaintiff's cell door. The nature of the altercation is contested. Defendants claim that Plaintiff called them over to return a library book, then became belligerent and held open his food port in an attempt to "gas" the Defendants. Plaintiff claims that he partially covered his cell door with a blanket in order to take a "bird bath" in his sink. Plaintiff was naked and feared he would receive a rules violation report for exposing himself to Defendant Martin, as Defendant Blattel had earlier threatened. According to Plaintiff, a struggle ensued between himself and Blattel over the blanket and Blattel tried to pull the blanket through the food port.

During the incident, Defendants deployed pepper spray against Plaintiff. Afterward, Plaintiff was not removed from his cell or taken to the showers. Plaintiff had access to a sink in his cell. The parties dispute whether Plaintiff was instructed on self-decontamination. Plaintiff later was seen by a nurse.

After being pepper sprayed, Plaintiff took another bird bath and cleaned up his cell. He washed his bed sheet with soap and water. Eventually, Plaintiff went to sleep. Plaintiff showered either the next day or the following day.

Plaintiff eventually was found guilty of a Rules Violation Report and assessed a loss of good-time credits for delaying a peace officer by holding open the food port, resulting in the use of force. Based on this Rules Violation Report, Plaintiff is precluded from arguing here that he did not hold open the food port. See Edwards v. Balisok, 520 U.S. 641, 646 (1987). Thus, despite Plaintiff's assertions to the contrary, the Court must find it undisputed that Plaintiff held open the food port during the pepper spray incident.

**D.     Analysis**

    **1.     Cruel and Unusual Punishment**

Plaintiff has presented insufficient evidence to raise a triable issue of fact as to whether Defendants were deliberately indifferent to his need for further decontamination and medical care. The undisputed evidence shows that Plaintiff was exposed to a two second burst of pepper spray to his face, chest and surrounding cell area. Thereafter, Plaintiff had access to a sink within his cell. Defendants were aware that Plaintiff had

access to soap and water in his cell. Plaintiff washed his face, cleaned up his cell, washed his sheet with soap and water, and went to bed. Plaintiff offers no evidence to suggest his cell was uninhabitable. Nor does he offer evidence to suggest that Defendants were aware that in-cell self-decontamination was ineffective but purposefully refused to provide further care. Plaintiff's claims of pain and difficulty breathing immediately following the administration of pepper spray are insufficient to raise a triable issue of fact as to whether Defendants exhibited deliberate indifference.[1] Other courts have rejected deliberate indifference claims under similar circumstances. Sekerke v. Kemp, 11-cv-2688 BTM (JMA), 2013 WL 950706, at *6 (S.D. Cal. Mar. 12, 2013) (no deliberate indifference where plaintiff was able to wash his eyes in a small fountain and no evidence was presented to demonstrate Defendants knew that this decontamination was ineffective); Maddox v. Ladd, 1:07-cv-01127 OWW GSA PC, 2011 WL 2946174, at *5-7 (E.D. Cal. Jul. 21, 2011) (no deliberate indifference where plaintiff waited three hours to take a shower but was able to self-decontaminate using a sink in the holding cell).

Plaintiff also has failed to raise a triable issue of fact regarding Defendants' alleged failure to summon medical assistance. It is undisputed that a nurse checked on Plaintiff's medical status shortly after the incident. Defendants were aware that Plaintiff was seen by a nurse. Although Plaintiff contends that the nurse's examination was insufficient, he offers no evidence to suggest that Defendants were aware of any deficiencies in the medical care Plaintiff received.

Based on the foregoing, Plaintiff has failed to present evidence that Defendants were deliberately indifferent to a serious risk to Plaintiff's health or safety by denying him medical assistance and the means to decontaminate following the administration of pepper spray. Accordingly, the Court will recommend that Plaintiff's motion for summary judgment on this claim be denied, and that Defendant's cross-motion for summary

---

[1] Because this conclusion is dispositive of the parties' motions for summary judgment, the Court does not address Defendants' alternative arguments.

judgment on this claim be granted.

### 2.     Retaliation

Plaintiff alleges Defendants retaliated against him by refusing to serve him his evening meal, take him to the showers, decontaminate his cell, or address his medical needs.

#### a.     Denial of Evening Meal

There is a genuine dispute of fact regarding the circumstances surrounding the denial of Plaintiff's evening meal. According to Defendants, the meal was denied because Plaintiff was belligerent, refused the meal, and refused to go to the back of his cell. Plaintiff denies these allegations. According to Plaintiff, the meal was denied in retaliation for his administrative complaints. The facts alleged by Plaintiff are sufficient to raise an inference of retaliatory intent.

Despite this dispute of fact, the Court concludes that Defendants are entitled to summary judgment on this claim. Plaintiff has not shown, or even alleged, that his own First Amendment rights actually were chilled by this conduct. Further, the Court finds the denial of Plaintiff's evening meal on a single occasion too de minimis to chill a person of ordinary firmness. See Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (finding that "a plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm that is more than minimal"); Rhodes, 408 F.3d at 567 n.11 (9th Cir. 2005) (stating that harm that is "more than minimal" is sufficient to show chilling effect); Davis v. Powell, 901 F. Supp. 2d 1196, 1213 (S.D. Cal. 2012) ("If the plaintiff's exercise of his constitutional rights was not chilled . . ., he must allege that the defendant's actions caused him to suffer more than minimal harm.").

Accordingly, the Court will recommend that Defendants' motion for summary judgment on this ground be granted.

#### b.     Denial of Showers and Failure to Decontaminate Cell

Defendants have presented evidence that Plaintiff's in-cell decontamination advanced legitimate goals of the correctional institution. Rizzo, 778 F.2d at 532.

Specifically, Defendants present evidence that Plaintiff was required to decontaminate in-cell because he held open the food port, and in-cell decontamination is permitted under such circumstances by the Department Operations Manual. Despite Plaintiff's statements to the contrary, the Court must accept as undisputed Defendants' assertion that Plaintiff held open the food port. Plaintiff was found guilty of doing so, assessed a loss of good time credits in relation thereto, and has not sought to overturn the loss of credits. See Edwards, 520 U.S. at 646.

Based on the adverse disciplinary findings against him, Plaintiff is unable to present evidence that his in-cell decontamination did not advance legitimate correctional goals, and his retaliation claim on these grounds therefore fails. The Court will recommend that Defendant's motion for summary judgment on these bases be granted.

### c.    Medical Needs

Plaintiff has not presented evidence that Defendants took adverse action against him in relation to any other medical needs. As stated above, a nurse was sent to check on Plaintiff's medical status following the incident, and there is no evidence to indicate Defendants were aware of any deficiencies in the nurse's examination.

Accordingly, Defendants' motion for summary judgment on this basis should be granted.

## V.    CONCLUSION AND RECOMMENDATION

The Court finds that Plaintiff has not met his burden of showing that no reasonable juror could find other than for him. Accordingly, it is HEREBY RECOMMENDED that Plaintiff's motion for summary judgment (ECF No. 47) be DENIED.

The Court further finds that Plaintiff has failed to raise a triable issue of fact regarding his deliberate indifference and retaliation claims. Based on the undisputed facts, Defendants have proved an absence of evidence to support Plaintiff's case and are entitled to judgment as a matter of law. Accordingly, it is FURTHER

RECOMMENDED that Defendants' motion for summary judgment (ECF No. 48) be GRANTED.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: April 8, 2015 /s/ *Michael J. Seng*
UNITED STATES MAGISTRATE JUDGE